No. 25-10890

# In the United States Court of Appeals for the Fifth Circuit

ERIC MCCUTCHAN; CENTER FOR INQUIRY, INCORPORATED,
*Plaintiffs-Appellants,*

v.

MARY LOUISE NICHOLSON, IN HER CAPACITY AS CLERK OF TARRANT COUNTY, TEXAS; PHIL SORRELLS, IN HIS CAPACITY AS DISTRICT ATTORNEY OF TARRANT COUNTY, TEXAS,
*Defendants-Appellees,*

OFFICE OF THE ATTORNEY GENERAL OF TEXAS,
*Intervenor Defendant-Appellee.*

*On Appeal from the United States District Court for the
Northern District of Texas
Honorable Reed O'Connor, Presiding
USDC No. 4:24-CV-01039-O*

## BRIEF OF APPELLANTS

M. Scott Barnard
Madison M. Gafford
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel for Appellants Eric McCutchen and
Center for Inquiry, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in

the outcome of this case. These representations are made in order that the judges of

this court may evaluate possible disqualifications or recusal:

**Plaintiffs-Appellants**
Eric McCutchan
Center for Inquiry, Inc. ("CFI")

**Other Interested Party**
CFI Austin (affiliate of CFI)

**Counsel for Plaintiffs-Appellants**
M. Scott Barnard
Madison M. Gafford
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

**Defendants-Appellees**
Mary Louise Nicholson, in her capacity
as Clerk of Tarrant County, Texas
Phil Sorrells, in his capacity as District
Attorney of Tarrant County, Texas

**Counsel for Defendants-Appellees**
Stephen Andrew Lund
Katherine Elizabeth Owens
401 W Belknap, 9th Floor
Fort Worth, TX 76196
Telephone: (817) 844-1233
Facsimile: (814) 884-1675

**Intervenor Defendant-Appellee**
Office of the Attorney General of Texas

**Counsel for Intervenor Defendant-Appellee**
Martin Arroyo, Jr.
Daniel M. Ortner
Mason Randle Currah
P.O. Box 12548
Austin, TX 78711
Telephone: (512) 475-4212

*s/ M. Scott Barnard*
M. Scott Barnard

*Attorney of record for Appellants*

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument.  This appeal presents a *de novo* issue regarding whether a sufficient threat of prosecution exists to challenge the constitutionality of Section 2.202 of the Texas Family Code, which improperly allows only religious leaders and a limited number of secular government officials to solemnize marriages in Texas.  Oral argument would assist the Court in resolving whether Appellants have standing to assert their claims that the statute violates the Establishment Clause, the Equal Protection Clause, the Freedom of Speech Clause, Article VI, and the Unconstitutional Conditions Doctrine under the United States Constitution.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.............................................i

STATEMENT REGARDING ORAL ARGUMENT...............................ii

STATEMENT OF JURISDICTION .........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................2

INTRODUCTION .................................................................................3

STATEMENT OF THE CASE................................................................5

    I.    Statutory and Factual Background ...........................................5

    II.   Procedural History...................................................................8

SUMMARY OF the ARGUMENT.......................................................10

STANDARD OF REVIEW ..................................................................12

ARGUMENT ....................................................................................13

    I.    The District Court Erred in Determining that Individual Appellant Does Not Have Standing .........................................................13

        A.    Individual Appellant Faces a Substantial Threat of Enforcement Under Section 2.202............................................13

            1.    The District Attorney's Refusal to Disavow Enforcement Reinforces the Threat of Prosecution........15

            2.    Frequent and Recent Amendments to Section 2.202 Support a Threat of Prosecution ...........................17

            3.    Enforcement Difficulty Does Not Eliminate the Risk of Prosecution..........................................................19

        B.    The District Court Erred in Its Determination that Section 2.202 Does Not Cover Expressive Activity for Purposes of First Amendment Standing ..................................................21

    II.   The District Court Erred in Determining CFI Does Not Have Associational Standing ...............................................................23

CONCLUSION....................................................................................24

CERTIFICATE OF SERVICE ..............................................................26

CERTIFICATE OF COMPLIANCE .......................................................27

# TABLE OF AUTHORITIES

**Federal Cases**

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ...............................................................24

*Babbitt v. UFW Nat'l Union*,
  442 U.S. 289 (1979)...................................................................14, 15

*Barilla v. City of Houston, Tex.*,
  13 F.4th 427 (5th Cir. 2021) .........................................................3, 15

*Cal. Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ...............................................................16

*Campbell v. St. Tammany Par. Sch. Bd.*,
  231 F.3d 937 (5th Cir. 2000) ...............................................................22

*Cheek v. United States*,
  498 U.S. 192 (1991)...........................................................................21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...........................................................................13

*Ctr. for Individual Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) ...............................................................22

*Ctr. For Inquiry, Inc. v. Warren*,
  No. 19-11029 (5th Cir.) .......................................................................16

*Ctr. for Inquiry, Inc. v. Warren*,
  No. 3:18-cv-02943 (N.D. Tex.) ...........................................................16

*Hebert v. United States*,
  53 F.3d 720 (5th Cir. 1995) .................................................................12

*Inst. for Free Speech v. Johnson*,
  148 F.4th 318 (5th Cir. 2025) ...............................................................15

*Justice v. Hosemann*,
  771 F.3d 285 (5th Cir. 2014) ...............................................................20

*Kaahumanu v. Hawaii*,
   682 F.3d 789 (9th Cir. 2012) ...............................................................22

*La Unión del Pueblo Entero v. Abbott*,
   751 F. Supp. 3d 673 (W.D. Tex. 2024) .............................................17

*Lane v. Halliburton*,
   529 F.3d 548 (5th Cir. 2008) ..............................................................12

*Murthy v. Missouri*,
   603 U.S. 43 (2024)................................................................................13

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) ..............................................................20

*NetChoice, L.L.C. v. Fitch*,
   134 F.4th 799 (5th Cir. 2025) ......................................................23, 24

*Peck v. McCann*,
   43 F.4th 1116 (10th Cir. 2022) ..........................................................15

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..............................................................12

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ..........................................14, 19, 21, 22

*Steffel v. Thompson*,
   415 U.S. 452 (1974)..............................................................................14

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
   37 F.4th 1078 (5th Cir. 2022) ............................................................23

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)...................................................................3, 14, 18

*Umphress v. Hall*,
   133 F.4th 455 (5th Cir. 2025) ......................................................15, 21

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996)..............................................................................24

**State Cases**

*Traxler v. Entergy Gulf States, Inc.*,
  376 S.W.3d 742 (Tex. 2012) ...........................................................18

**Federal Statutes**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

**State Statutes**

Act of May 18, 2005, 79th Leg., R.S., ch. 268 (S.B. 6) ), § 4.10, 2005
  Tex. Gen. Laws 268 ...............................................................7, 18

Acts 2009, 81st Leg., ch. 134 (S.B. 935), § 1, eff. Sept. 1, 2009, 2009
  Tex. Gen. Laws 134 ...............................................................7, 18

Acts 2013, 83rd Leg., ch. 1350 (S.B. 1317), § 2, eff. Sept. 1, 2013,
  2013 Tex. Gen. Laws 1350 ....................................................7, 18

Acts 2015, 84th Leg., ch. 1069 (H.B. 2278), § 1, eff. Sept. 1, 2015,
  2015 Tex. Gen. Laws 1069 ....................................................7, 18

Acts 2023, 88th Leg., ch. 394 (H.B. 907), §§ 1, 2, eff. Sept. 1, 2023,
  2023 Tex. Gen. Laws 394 ......................................................7, 18

TEX. FAM. CODE § 2.001(a) ...............................................................6

TEX. FAM. CODE § 2.002 ....................................................................6

TEX. FAM. CODE § 2.008 ....................................................................6

TEX. FAM. CODE § 2.009 ....................................................................6

TEX. FAM. CODE §§ 2.201-2.208 .......................................................6

TEX. FAM. CODE § 2.202 ..........................................................*passim*

TEX. FAM. CODE § 2.302 ....................................................................6

TEX. LOC. GOV'T CODE § 87.011 .....................................................17

TEX. PENAL CODE § 12.21 ..........................................................6, 20

**Rules**

5th Cir. R. 32.2 ............................................................................................... 27

Fed. R. App. P. 32(a) ...................................................................................... 27

Fed. R. App. P. 32(f) ...................................................................................... 27

Fed. R. Civ. P. 12(b)(1) .............................................................................. 8, 12

Fed. R. Civ. P. 12(b)(6) ................................................................................... 8

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the case pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the U.S. Constitution.  In particular, the district court's federal question jurisdiction is based on challenges to Texas Family Code § 2.202 under the Establishment Clause, the Equal Protection Clause, the Freedom of Speech Clause, Article VI, and the Unconstitutional Conditions Doctrine.

This Court has jurisdiction under 28 U.S.C. § 1291.  The final judgment below was entered on July 2, 2025, and disposed of all issues in this case.  ROA.293.  No motion for a new trial, alteration of the judgment, or any other motion that would have tolled the time for appeal was filed.  The Notice of Appeal was filed on July 31, 2025.  ROA.294-295.  This is not an appeal from a decision of a magistrate judge.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred as a matter of law in concluding that Individual Appellant McCutchan lacked standing, specifically by finding that he failed to allege an injury sufficient to support pre-enforcement standing under Article III.

2.      Whether the district court erred as a matter of law in concluding that Section 2.202 of the Texas Family Code does not regulate expressive activity.

3.      Whether the district court erred as a matter of law in concluding that Appellant Center for Inquiry, Inc. lacked associational standing based solely on the determination that Individual Appellant McCutchan lacked standing.

# INTRODUCTION

This Court has long recognized that parties bringing constitutional challenges "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Barilla v. City of Houston, Tex.*, 13 F.4th 427, 431 (5th Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Yet despite this settled precedent, the district court dismissed Appellants' claims for lack of standing, concluding that the threat of prosecution under Texas Family Code Section 2.202 ("Section 2.202") was "wholly speculative." ROA.288. That decision left Appellant Eric McCutchan ("Individual Appellant") with a constitutionally untenable choice: either violate the law and risk criminal prosecution or forfeit his ability to challenge the statute's constitutionality.

Individual Appellant is a secular celebrant certified by Appellant Center for Inquiry, Inc. ("CFI" and together with Individual Appellant, the "Appellants"). He seeks to solemnize marriages in Texas, just as those affiliated with religious organizations are permitted to do. But under Section 2.202, he faces the risk of criminal prosecution—including up to one year in jail and a $4,000 fine—for performing the same ceremonies. Appellee Phil Sorrells, the Tarrant County, Texas District Attorney (the "District Attorney"), refuses to disavow enforcement of Section 2.202, which was recently amended and remains an active law. Section 2.202 provides no lawful mechanism for Appellants to assert their rights or test the

statute's constitutionality without risking criminal liability. That is precisely the situation that the pre-enforcement standing doctrine is designed to prevent.

This Court should reverse the district court's dismissal and remand with instructions to exercise jurisdiction over Appellants' claims. Appellants have adequately alleged concrete injuries that are fairly traceable to the challenged statute and redressable by judicial relief. They are entitled to their day in court.

## STATEMENT OF THE CASE

### I.    Statutory and Factual Background

CFI is a national organization dedicated to fostering a secular society grounded in reason, science, freedom of inquiry, and humanist values. ROA.10. CFI has over 30,000 supporters nationwide, including approximately 1,000 in Texas. *Id*. CFI operates branches across the United States, including in Texas, where it hosts regular meetings, educational events, and social activities. *Id*.

CFI is a purely secular organization that promotes secular humanism and encourages individuals to develop ethical values without reliance on supernatural beliefs. ROA.11. It maintains that scientific reasoning should guide the examination of religious claims and emphasizes moral principles such as integrity, trustworthiness, benevolence, and fairness as universal foundations for ethical conduct. *Id*.

Individual Appellant Eric McCutchan is a certified secular celebrant trained by CFI to solemnize marriages for couples who seek ceremonies that reflect their philosophical and ethical convictions. *Id.* Like religious officiants who perform faith-based ceremonies, secular celebrants wish to partake in marriage ceremonies that share a meaningful expression of their worldview. *Id.* Both Individual Appellant and CFI's Austin, Texas branch have received requests to conduct such

weddings but have been forced to decline due to the criminal penalties found in Section 2.202.  ROA.13.

In Texas, "[a] man and a woman desiring to enter into a ceremonial marriage must obtain a marriage license from the county clerk of any county" in the state. TEX. FAM. CODE § 2.001(a).  The respective county clerk then issues marriage licenses to couples following proper execution of the application for a license under Sections 2.002 and 2.008. *Id.* § 2.009.  To ensure formal recognition of the marriage, an authorized person must conduct the marriage ceremony within 90 days of the date the license is issued, and return the license to the issuing county clerk within 30 days of the date the ceremony is conducted. *Id.* §§ 2.201-2.208.  Section 2.202 limits who may conduct a marriage ceremony to the following:

> (1) a licensed or ordained Christian minister or priest;
> (2) a Jewish rabbi;
> (3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony; and
> (4) a current, former, or retired federal judge or state judge.

*Id.* § 2.202(a).  A marriage conducted by a person who is not listed in Section 2.202 is invalid. *Id.* § 2.302.  Further, an unauthorized officiant faces criminal prosecution for committing a Class A misdemeanor, exposing them to punishment of up to one year in jail and a fine of up to $4,000. *Id.* § 2.202(c); TEX. PENAL CODE § 12.21.

Since its re-codification in 1997, Section 2.202 has been amended multiple times.  In 2005, the statute was revised to add criminal penalties for unauthorized

officians.  *See* Act of May 18, 2005, 79th Leg., R.S., ch. 268 (S.B. 6), § 4.10, 2005 Tex. Gen. Laws 268.  Subsequent amendments in 2009, 2013, and 2015 expanded the categories of individuals authorized to conduct marriage ceremonies, including municipal judges, associate judges of statutory probate courts, and retired federal judges and magistrates.  *See* Acts 2009, 81st Leg., ch. 134 (S.B. 935), § 1, eff. Sept. 1, 2009, 2009 Tex. Gen. Laws 134; Acts 2013, 83rd Leg., ch. 1350 (S.B. 1317), § 2, eff. Sept. 1, 2013, 2013 Tex. Gen. Laws 1350; Acts 2015, 84th Leg., ch. 1069 (H.B. 2278), § 1, eff. Sept. 1, 2015, 2015 Tex. Gen. Laws 1069.  The most recent amendment, enacted in 2023, further consolidated and clarified the list of authorized officials and incorporated cross-references to definitions in the Texas Tax Code.  *See* Acts 2023, 88th Leg., ch. 394 (H.B. 907), §§ 1, 2, eff. Sept. 1, 2023, 2023 Tex. Gen. Laws 394.  However, this amendment still excluded Appellants.

Pursuant to Section 2.202, Appellee Mary Louise Nicholson, Clerk of Tarrant County, Texas (the "County Clerk"), is prohibited from "record[ing] licenses returned by secular celebrants and other qualified officials that are not authorized to conduct marriage ceremonies."  ROA.13.  Likewise, District Attorney Phil Sorrells (collectively, with the County Clerk, "Appellees") may bring criminal charges under Section 2.202 against Individual Appellant or any other secular celebrant who attempts to solemnize a marriage.  *Id.*  Accordingly, Appellants are being caused irreparable harm for which there is no adequate remedy at law.  *Id.*

7

## II.    Procedural History

Appellants filed their Original Complaint on October 25, 2024.  ROA.7-19.
On November 26, 2024, Appellees moved to dismiss under Federal Rules of Civil
Procedure 12(b)(1) and 12(b)(6).  ROA.43-59.  Appellants filed a First Amended
Complaint on December 17, 2024.  ROA.71-86.  On December 31, 2024, Appellees
moved to dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6).
ROA.109-128.

On January 15, 2025, the Attorney General of Texas (the "State") moved to
intervene, ROA.136-143, and moved to dismiss under Rules 12(b)(1) and 12(b)(6).
ROA. 145-176.  Among its other arguments, the State took the position for the first
time that CFI was a "religious organization,"[1] and thus, could lawfully solemnize
marriages under Section 2.202.  ROA.157-162.

On July 2, 2025, the district court granted Appellees' motion to dismiss in full.
ROA.275-293.  The district court found that Individual Appellant had sufficiently
alleged injury with respect to the County Clerk, but lacked standing to sue the
District Attorney.   ROA.287.   Specifically, the district court concluded that
Individual Appellant failed to demonstrate a substantial threat of future enforcement
under Section 2.202 for pre-enforcement standing.  ROA.288.  Because Individual

---

[1] Appellants agree with the district court's conclusion that CFI is not a "religious organization."  ROA.279.

Appellant could not proceed without the District Attorney, the district court dismissed the action without prejudice for lack of subject matter jurisdiction. ROA.290-292.  The district court also granted in part the State's motion to dismiss on the same grounds.  ROA.291-292.

The district court further held that CFI lacked associational standing because its claims were predicated on Individual Appellant's individual standing.  *Id.* However, the district court denied the State's argument that CFI is a "religious organization." *Id*.

Accordingly, the district court dismissed all claims without prejudice for lack of subject matter jurisdiction.  ROA.293.  Appellants now appeal and respectfully request that this Court reverse the district court's dismissal and remand with instructions to exercise jurisdiction over their claims.

## SUMMARY OF THE ARGUMENT

This appeal addresses a straightforward issue: whether Appellants have standing to challenge Section 2.202 against the District Attorney. The district court erroneously concluded that Appellants did not, relying on the statute's limited history of enforcement and the perceived difficulty of detecting violations. But this reasoning misapplies this Court's precedent on pre-enforcement standing. While a history of past enforcement may support standing, it is not required. Under Fifth Circuit and Supreme Court case law, the existence of a statute with criminal penalties—particularly one recently amended and revised multiple times—combined with a party's intent to engage in arguably proscribed conduct, can be sufficient to establish standing.

Individual Appellant satisfies the requirements for pre-enforcement standing. The district court did not dispute that he intends to engage in conduct affected by a constitutional interest, nor that his intended conduct is arguably proscribed by Section 2.202. The only prong at issue is whether he faces a substantial threat of enforcement. On that point, the district court erred. Section 2.202 remains active law, was amended as recently as 2023, and imposes criminal penalties for unauthorized officiants. Additionally, the District Attorney and the State refused opportunities to disavow enforcement in the district court.

Further, because Individual Appellant has standing, CFI likewise satisfies the requirements of associational standing. The district court's dismissal should be reversed, and the case remanded with instructions to exercise jurisdiction over Appellants' claims.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction *de novo*. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995)). Under this standard, the Court applies the same legal framework as the district court and reviews the complaint's allegations in the light most favorable to the plaintiff. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citation omitted).

**ARGUMENT**

## I.    The District Court Erred in Determining that Individual Appellant Does Not Have Standing

The district court erred in concluding that Individual Appellant lacks standing to challenge Section 2.202 against the District Attorney, despite clear allegations of injury, traceability, and redressability.  To establish Article III standing, a party must demonstrate that they "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).  Individual Appellant satisfies all three requirements.

Notably, the district court did not dispute that Individual Appellant has standing to sue the County Clerk.  ROA.286-287.  Specifically, the court found that Individual Appellant had sufficiently alleged an injury in fact based on the discriminatory barrier to solemnizing marriages with respect to the County Clerk. *Id.*  As such, the sole issue is whether standing exists to sue the District Attorney.

### A.    Individual Appellant Faces a Substantial Threat of Enforcement Under Section 2.202

The district court misapplied this Court's pre-enforcement standing framework by focusing narrowly on the absence of past prosecutions.  While the district court correctly noted the statute's limited enforcement history, that fact alone does not defeat standing.  *See* ROA.289.  This Court applies a three-part test for pre-

13

enforcement standing, determining that "a plaintiff has suffered an injury in fact if he (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (quoting *Susan B. Anthony List*, 573 U.S. at 161-164).[2]  The district court did not dispute that Individual Appellant intends to engage in conduct affected by a constitutional interest, nor did it question that his intended conduct is prohibited by Section 2.202.  ROA.287-288.  Instead, the district court's dismissal rested entirely on its conclusion that Individual Appellant does not face a substantial threat of enforcement by the District Attorney.  ROA.288-289.

This conclusion, however, ignores the constitutional harm that arises when a party must choose between exercising protected rights and risking criminal liability. *See Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 302 (1979) ("[W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'") (quoting *Steffel v. Thompson*, 415 U.S.

---

[2] While *Speech First* involved First Amendment claims, its standing analysis is grounded in the broader pre-enforcement framework established by the Supreme Court in *Susan B. Anthony List*.  That framework applies to all constitutional claims, not just those involving expressive conduct.

452, 459 (1974)). That dilemma is precisely what pre-enforcement standing is designed to prevent.

**1.**  ***The District Attorney's Refusal to Disavow Enforcement Reinforces the Threat of Prosecution***

The district court erroneously treated the absence of prior prosecutions under Section 2.202 as dispositive, disregarding multiple indicators of a credible threat of future enforcement. Most notably, the District Attorney (along with the State) refuses to disavow enforcement of Section 2.202. As the Fifth Circuit has recognized, "prospective factors," such as the "refusal to disavow future enforcement" can outweigh "any past circumstances." *Umphress v. Hall*, 133 F.4th 455, 466 (5th Cir. 2025) (citations omitted). The persistent threat posed by Section 2.202 is amplified by this silence. This refusal is not merely procedural—it leaves Individual Appellant in a position where he cannot safely test the constitutionality of the statute without risking up to a year of jail time and a hefty fine.

As this Court recognized in *Barilla*, "where 'the State has not disavowed any intention of invoking' the challenged law, plaintiffs are 'not without some reason in fearing prosecution.'" 13 F.4th at 432 (quoting *Babbitt*, 442 U.S. at 302); *see also Inst. for Free Speech v. Johnson*, 148 F.4th 318, 329 (5th Cir. 2025) (noting that declining to give assurances against enforcement is "cold comfort") (citing *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) (concluding that the refusal to disavow prosecution carried "heavy weight" in pre-enforcement standing analysis));

*Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("[T]he state's refusal to disavow enforcement . . . is strong evidence that the state intends to enforce the law," and, thus, Appellants "face a credible threat.") (citations omitted).

The District Attorney has had multiple opportunities to disavow enforcement—in response to the complaint, in briefing, and during the April 16, 2025 hearing[3]—but declined to do so. Further, while the State argued for a broader interpretation of Section 2.202 to encompass CFI, it did not disavow enforcement of the statute if it were found that CFI was not a "religious organization." *See* ROA.157-162. Additionally, no party disavowed enforcement in a similar lawsuit brought in the Northern District of Texas in Dallas County and the corresponding appeal to the Fifth Circuit. *See Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-cv-02943 (N.D. Tex.); *Ctr. For Inquiry, Inc. v. Warren*, No. 19-11029 (5th Cir.).

Assuming, contrary to the record, that the District Attorney did disavow enforcement, a subsequent district attorney could immediately reverse enforcement policies after their election. Individual Appellant would then suddenly face the

---

[3] Instead, when given the opportunity, counsel for the District Attorney merely indicated that the injury would be imminent if, for example, "[T]he current district attorney, Phil Sorrells, was elected a few years ago. Perhaps he campaigned on a platform of, 'I see a real problem with these people conducting marriage ceremonies. They're not allowed to. I'm going to enforce that, or, hey, I just created this new task force for the sheriff to find these people. I'm going to try and find them and make prosecutions.'" ROA.360.

threat of criminal charges, while couples married by the Individual Appellant would then face the threat of the invalidation of their marriages.

In any event, even if the District Attorney wished to disavow enforcement, and there is no indication of such, Texas law prohibits him from doing so.[4]  As of 2023, district attorneys who adopt policies of non-enforcement may be removed for "[o]fficial misconduct."  TEX. LOC. GOV'T CODE § 87.011; *see also La Unión del Pueblo Entero v. Abbott*, 751 F. Supp. 3d 673, 712 (W.D. Tex. 2024) ("Indeed, the County DAs may *not* disavow . . . enforcement under Texas law.") (original emphasis) (citations omitted).

Taken together, the refusal to disavow enforcement, the statutory prohibition of non-enforcement policies, and the absence of any contrary evidence all support a finding that Individual Appellant faces a substantial threat of prosecution under Section 2.202.

**2.    *Frequent and Recent Amendments to Section 2.202 Support a Threat of Prosecution***

In addition to the District Attorney's silence, the Texas Legislature's continued revisitation of Section 2.202 supports a likelihood of future prosecution.  As explained above, Section 2.202 is not a dormant or forgotten provision—it is a

---

[4] *See* Office of the Texas Governor, Greg Abbott, *Governor Abbott Signs 8 Public Safety Bills Into Law To Protect Texans* (June 6, 2023), https://gov.texas.gov/news/post/governor-abbott-signs-8-public-safety-bills-into-law-to-protect-texans (last visited Sept. 7, 2025) ("One of those bills holds rogue district attorneys accountable.  If a rogue district attorney wants to be in law enforcement, they have to start by enforcing the laws of the State of Texas.").

statute that has been actively maintained and refined over the past three decades. Section 2.202's most recent amendment in 2023—after CFI's previous suit in the Northern District of Texas and subsequent Fifth Circuit appeal—confirms that the State continues to view the statute as relevant and enforceable. *See* Acts 2023, 88th Leg., ch. 394 (H.B. 907), §§ 1, 2, eff. Sept. 1, 2023, 2023 Tex. Gen. Laws 394. *See also Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012) ("We presume the Legislature is aware of relevant caselaw when it enacts or amends statutes.") (citations omitted). These legislative updates have not been minor or technical; they have expanded the categories of authorized officiants, clarified enforcement mechanisms, and incorporated cross-references to other areas of Texas law. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 268 (S.B. 6), § 4.10, 2005 Tex. Gen. Laws 268; Acts 2009, 81st Leg., ch. 134 (S.B. 935), § 1, eff. Sept. 1, 2009, 2009 Tex. Gen. Laws 134; Acts 2013, 83rd Leg., ch. 1350 (S.B. 1317), § 2, eff. Sept. 1, 2013, 2013 Tex. Gen. Laws 1350; Acts 2015, 84th Leg., ch. 1069 (H.B. 2278), § 1, eff. Sept. 1, 2015, 2015 Tex. Gen. Laws 1069. This sustained attention reflects a clear legislative intent to preserve and enforce Section 2.202 as a criminal statute.

In this context, any notion that the statute is moribund cannot be squared with its recent history. Courts presume enforcement of laws that remain on the books and carry criminal penalties—especially when the legislature has repeatedly revisited and revised them. *See Susan B. Anthony List*, 573 U.S. at 158-164 (holding that a

credible threat of enforcement may exist even absent prior prosecutions, particularly where the statute remains in force and carries penalties); *Speech First*, 979 F.3d at 336 (explaining that courts presume enforcement of non-moribund statutes unless there is compelling contrary evidence). Section 2.202 is precisely such a law, and its continued exclusion of secular celebrants from the list of authorized officiants places Individual Appellant squarely within its reach.

### 3.   *Enforcement Difficulty Does Not Eliminate the Risk of Prosecution*

Potential enforcement difficulty does not eliminate the risk of prosecution. The district court also denied standing on its conclusion that it is essentially "impossible" for the District Attorney to determine whether a secular celebrant violated Section 2.202. ROA.289. However, enforcement of Section 2.202 is unlikely to be difficult. Weddings are inherently public events, often announced, photographed, and shared online. CFI is a well-known organization, and its secular celebrants frequently operate in visible, community-facing roles. If CFI's secular celebrants conducted a marriage ceremony in Texas, a simple Internet search could reveal the event, particularly if the celebrant or couple publicly acknowledged the ceremony. The only way to avoid detection would be to conduct the ceremony in secret, which runs counter to the very purpose of solemnizing a marriage—public recognition and legal validation.

Even if enforcement was difficult for the District Attorney, that does not make the conduct any less criminal. Section 2.202 remains in force and imposes a Class A misdemeanor for knowingly conducting a marriage ceremony without authorization. TEX. FAM. CODE § 2.202(c); TEX. PENAL CODE § 12.21. With regard to the free speech component of Appellants' claims, the statute's nature heightens the chilling effect on Individual Appellant's conduct and reinforces the credibility of the threat. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) ("[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief.") (quoting *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014)).

The district court's reasoning does not provide a safe harbor for Individual Appellant. Under the district court's logic, Individual Appellant would be forced to conduct wedding ceremonies under a constant threat of prosecution, hoping that enforcement remains ineffective. Moreover, the couple willing to be married by Individual Appellant would have to sit in constant fear that their marriage would be invalidated. Individual Appellant would have no assurance that the District Attorney will not develop new methods to identify unauthorized celebrants or enforce the statute more aggressively in the future.

And if Individual Appellant were to be prosecuted, he would have little recourse. As the Supreme Court has made clear, "ignorance of the law or a mistake

of law is no defense to criminal prosecution." *Cheek v. United States*, 498 U.S. 192, 199 (1991) (citations omitted). The same principle applies here. The difficulty of detecting violations does not diminish the legal risk or the chilling effect imposed by Section 2.202.

### B. The District Court Erred in Its Determination that Section 2.202 Does Not Cover Expressive Activity for Purposes of First Amendment Standing

Individual Appellant's pre-enforcement standing is reinforced by the fact that Section 2.202 regulates expressive activity.[5] "[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335 (citations omitted). In *Umphress*, this Court considered a county judge who refused to officiate same-sex marriages to be engaging in "expressive conduct." 133 F.4th at 464 (citations omitted). Individual Appellant's decision to solemnize secular wedding ceremonies is a form of

---

[5] The district court incorrectly stated that Appellants conceded that Section 2.202 does not restrict expressive activity. *See* ROA.289. While Appellants acknowledged that Section 2.202 does not regulate the specific words spoken during a marriage ceremony, it does restrict who may officiate the ceremony. That restriction directly implicates expressive activity. Officiating a wedding is a deeply symbolic act that conveys personal, cultural, and ideological meaning. By limiting that role to individuals affiliated with religious organizations, Section 2.202 excludes secular celebrants from participating in a form of expression that is both public and constitutionally protected. Indeed, the State is the party that conceded that "the performance of a marriage ceremony is doubtless expressive conduct." ROA.174.

expressive conduct, analogous to the county judge's refusal to officiate same-sex weddings, even if it is not necessarily religious in nature. After all, an activity need not be religious to be considered expressive activity under the First Amendment. *See Campbell v. St. Tammany Par. Sch. Bd.*, 231 F.3d 937, 941 (5th Cir. 2000) (considering "partisan political activity" and "for-profit fund-raising" to be "expressive activities"); *see also Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012) ("We have no difficulty concluding that wedding ceremonies are protected expression under the First Amendment.").

As Section 2.202 facially restricts Individual Appellant's expressive activity, the district court should have assumed that Individual Appellant faced a credible threat of prosecution due to the absence of compelling contrary evidence. It did not, and, thus, the district court was in error. ROA.288-289. The District Attorney has failed to explicitly disavow any potential prosecution of Individual Appellant. Again, the lack of past prosecutions under Section 2.202 does not automatically render the threat of prosecution non-existent. The fact that other parties have "relied on a history of past enforcement to show a substantial threat of future enforcement does not contradict . . . that a plaintiff who is subject to a regulation or proscription has standing to sue." *Speech First*, 979 F.3d at 336. In fact, "[e]ither type of evidence may establish 'a fear of prosecution that is not imaginary or wholly speculative.'" *Id.* (citing *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655,

660 (5th Cir. 2006)) (other citations omitted). Individual Appellant is clearly subject to Section 2.202's restrictions and that is evidence enough. Due to Section 2.202's restrictions on expressive activity and its applicability to Individual Appellant, the district court should have assumed a credible threat of enforcement against Individual Appellant due to the lack of compelling contrary evidence.

## II.    The District Court Erred in Determining CFI Does Not Have Associational Standing

The lower court erroneously concluded that Appellant CFI lacked associational standing solely because it found that Individual Appellant lacked standing. ROA.291. Because Individual Appellant does have standing, as explained above, Appellant CFI satisfies the requirements for associational standing as well.

CFI brought this action to protect its members from prosecution under Section 2.202. Under well-established precedent, an association may assert standing on behalf of its members when the following requirements are met: "(1) its individual members would have standing to bring the suit; (2) the association seeks to vindicate interests germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the individual members' participation." *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025) (citing *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 37 F.4th 1078, 1084 (5th Cir. 2022)).

CFI satisfies all three prongs. *First*, Individual Appellant is a certified secular celebrant and member of CFI. As demonstrated above, he has standing to challenge

Section 2.202.  The Fifth Circuit has repeatedly held that the presence of one member with standing is sufficient to satisfy this prong.  *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010); *see also United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996).

*Second*, the interests CFI seeks to protect—namely, the ability of its members to solemnize marriages without fear of prosecution—are central to its organizational mission.  CFI promotes secular humanism and provides training and certification for secular celebrants.  Preventing criminal liability for its members when performing ceremonies is directly germane to that purpose.

*Finally*, none of the claims nor the relief requested requires the participation of CFI's individual members.  While Individual Appellant is an individual member of CFI, that does not violate this requirement.  "'[C]laims can be proven by evidence from representative injured members' and 'the participation of [certain] individual members does not thwart associational standing.'"  *NetChoice*, 134 F.4th at 805 (quoting *Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 552).

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court reverse the district court's grant of the motions to dismiss, order the district court to exercise jurisdiction on the basis that Appellants have standing to pursue their

claims, and grant Appellants any such other and further relief deemed just and proper.

Dated: September 29, 2025            Respectfully submitted,

                                     *s/ M. Scott Barnard*
                                     M. Scott Barnard
                                     Texas State Bar No. 24001690
                                     sbarnard@akingump.com
                                     Madison M. Gafford
                                     Texas State Bar No. 24120833
                                     mgafford@akingump.com
                                     Akin Gump Strauss Hauer & Feld LLP
                                     2300 N. Field Street, Suite 1800
                                     Dallas, Texas 75201
                                     Telephone: (214) 969-2800
                                     Facsimile: (214) 969-4343

                                     *Counsel for Appellants Eric McCutchen and
                                     Center for Inquiry, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered users and will be served by the CM/ECF system.

*s/ M. Scott Barnard*
M. Scott Barnard

*Counsel for Appellants Eric McCutchen and Center for Inquiry, Inc.*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,832 words, as determined by the word-count feature of Microsoft Word for Microsoft 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 point Times New Roman font.

*s/ M. Scott Barnard*
M. Scott Barnard